Milos JIRICKO, Appellant

v.

**GEICO INSURANCE COMPANY and Stephanie Rollins, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 8, 2008.

Filed April 4, 2008.

---

Milos Jiricko, appellant, pro se.

James C. Haggerty, Philadelphia, for appellees.

BEFORE: STEVENS, ORIE MELVIN, and BENDER, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is a *pro se* appeal from the final order entered in the Court of Common Pleas of Lancaster County granting summary judgment in favor of Appellee Geico Insurance Company (Geico) and against Appellant Milos Jiricko.[1] For the reasons discussed *infra*, we find Appellant's issues to be waived pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), and accordingly, we affirm.

¶ 2 The relevant facts and procedural history are as follows: On April 1, 2003, Appellant, who was unrepresented by counsel, filed a complaint averring he had purchased from Geico an automobile insurance policy, which included the full tort option coverage. Appellant further averred that, on February 26, 2002, Appellant, who is a physician, was injured when the vehicle he was driving was rear-ended by an uninsured motorist. While Geico paid Appellant's medical bills, it refused Appellant's demand for financial compensation for pain and suffering. Appellant claimed Geico was liable for breach of contract, bad faith, breach of fiduciary duties, and causing emotional distress.

---

1. As discussed below, on March 14, 2006, partial summary judgment was entered in favor of the other defendant, Appellee Stephanie Rollins.

¶ 3 On April 22, 2003, Geico filed preliminary objections averring Appellant's complaint failed to state a claim upon which relief could be granted, Appellant failed to attach a required verification, Appellant did not properly plead a claim for punitive damages, and Appellant failed to comply with the insurance contract's requirement of arbitration. Thereafter, Appellant amended his complaint twice, thereby adding a claim of misrepresentation, and Geico filed substantially similar preliminary objections. Appellant subsequently filed a motion for default judgment since Geico did not file an answer to Appellant's complaint, and Geico filed a motion to compel arbitration.[2]

¶ 4 By order entered on August 13, 2003, the trial court ordered Appellant's uninsured motorist claims to be referred to arbitration, with the trial court retaining jurisdiction over the bad faith and all other remaining claims. The trial court stayed all proceedings pending the completion of arbitration. The trial court further suggested that Appellant obtain legal counsel.[3]

¶ 5 Thereafter, following numerous additional *pro se* filings by Appellant, including a motion to add Geico's employee, Appellee Stephanie Rollins, as an additional defendant, Richard C. Low, Esquire, who was appointed as arbitrator, sent the trial court a letter seeking to withdraw as arbitrator. Attorney Low contended that Appellant would not cooperate and Scott Morrow, Esquire had contacted Attorney Low to report that he had been appointed as an arbitrator.[4] Following a hearing, by order entered on July 30, 2004, the trial court found Appellant to be in contempt for failing to abide by the court's August 13, 2003 order. The trial court ordered Appellant to arbitrate his uninsured motorist claim and honor the trial court's August 13, 2003 stay order on all remaining claims. Appellant filed a notice of appeal to this Court, and we quashed the appeal as being from an interlocutory order. *Jiricko v. Geico Insurance Company and Stephanie Rollins*, 880 A.2d 17 (Pa.Super. 2005) (unpublished memorandum).

¶ 6 On June 30, 2005, Appellee Stephanie Rollins filed a motion seeking permission to file a motion for summary judgment to have herself, a Geico employee, removed as a defendant. The motion indicated that Appellant was seeking to depose Ms. Rollins and, therefore, Ms. Rollins requested the trial court lift the stay in order to decide the motion for summary

---

**2.** In its opinion granting summary judgment in favor of Geico, the trial court noted that "[a]fter these filings, the pleadings deteriorated rapidly and as of August 25, 2006, there have been one hundred and thirty-six (136) docket entries, the vast majority of these occurring prior to May 4, 2006 when the undersigned was assigned to this case." Trial Court Opinion filed 1/2/07 at 3.

**3.** On October 21, 2003, Appellant filed an action in the United States District Court for the Eastern District of Pennsylvania against Geico's original counsel and legal firm alleging the trial judge and Geico had conspired to deprive him of his civil rights relative to the underlying action. The federal court dismissed the action concluding it had no jurisdiction.

**4.** On July 1, 2004, Appellant filed a complaint in the Court of Common Pleas of Philadelphia County against Geico's original counsel and law firm, Geico's replacement counsel, and the Honorable Paul K. Allison. Appellant continued to allege the legal professionals and the trial court judge were conspiring against him. The Court of Common Pleas of Philadelphia County sustained the defendants' preliminary objections, and dismissed the case. This Court affirmed concluding Appellant was not entitled to recovery. *Jiricko v. Bennett, Bricklin & Saltzburg, LLP; Swartz, Campbell, LLC; Howard Ford; Paul Allison; and James Haggerty*, 303 EDA 2005 (Pa.Super. filed August 25, 2005) (unpublished memorandum). The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal.

judgment. Appellant filed a motion for sanctions. By order entered on October 21, 2005, the trial court granted Appellant's motion for sanctions, thereby awarding costs of $2,500.00, and denied the request for permission to file a motion for summary judgment. However, by order entered on November 15, 2005, the trial court vacated the October 21, 2005 order, indicating the order had been prematurely entered, and denied the motion for sanctions. The trial court scheduled oral argument on the request to file a motion for summary judgment as to Ms. Rollins. Following argument, by order entered on November 28, 2005, the trial court ruled Ms. Rollins could file a motion for summary judgment.

¶ 7 On December 2, 2005 and March 10, 2006, Geico and Ms. Rollins filed joint motions for leave to file a motion to dismiss averring that Appellant "has continuously, repeatedly, and deliberately ignored the August 13, 2003 Order of the Court, filing various lawsuits and pleadings and ... refusing to submit his uninsured motorist claims to arbitration." Geico and Ms. Rollins requested the stay be lifted so the court could address Appellant's outrageous actions.

¶ 8 On December 9, 2005, Ms. Rollins filed a motion for summary judgment, and Appellant filed a response seeking to strike the motion for summary judgment. On January 25, 2006, Geico requested the arbitration hearing be scheduled, the hearing was scheduled for March 31, 2006, and Appellant filed a motion to quash the arbitration hearing. By orders entered on March 14, 2006, the trial court denied Appellant's motion to strike the motion for summary judgment. The trial court granted summary judgment in favor of Ms. Rollins and dismissed her as a party defendant in the case. The trial court granted Geico permission to file a motion to dismiss.[5]

¶ 9 On March 31, 2006, an arbitration hearing was held. Despite being provided with proper notice, Appellant failed to appear and did not argue his motion to quash the arbitration hearing. Therefore, the motion to quash was denied and a hearing on Appellant's claim proceeded. On March 31, 2006, the arbitrators found in favor of Geico, and on May 18, 2006, Geico filed a motion to confirm the arbitration award.

¶ 10 By order entered on May 19, 2006, the trial court vacated its August 13, 2003 order staying the proceedings, and by order entered on May 30, 2006, the trial court confirmed the arbitration award entered in favor of Geico and entered judgment in favor of Geico and against Appellant as to the uninsured motorist claim. Remaining at this point were Appellant's bad faith, breach of contract, breach of fiduciary, misrepresentation, and emotional distress claims against Geico.

¶ 11 On July 17, 2006, Geico filed a motion seeking to dismiss and/or for summary judgment as to all remaining claims. The trial court issued a rule to show cause as to why Geico's motion should not be granted, and Appellant filed a reply. By opinion and order entered on January 2, 2007, the trial court granted summary judgment in favor of Geico as to all remaining claims, and Appellant filed a time-

5. On April 18, 2006, Appellant filed a second federal complaint in the U.S. District Court against Judge Allison and Geico's legal counsel. Appellant's allegations were similar to those made in the previous federal lawsuit. The federal court dismissed the action with prejudice and scheduled a hearing regarding the defendants' request for sanctions. Appellant filed an appeal to the United States Court of Appeals for the Third Circuit. This Court has been provided with no information as to whether sanctions were imposed against Appellant.

ly appeal to this Court.[6] By order entered on January 29, 2007, the trial court directed Appellant to file a Pa.R.A.P.1925(b) statement, and the record reveals that notice of the order was provided to Appellant pursuant to Pa.R.C.P. 236 on January 30, 2007. On February 6, 2007, Appellant filed a responding statement entitled "Plaintiff's Response to J. Madenspacher Order of 1/29/07 Renew the Petition to Strike Off Void Judgment Renew Motion for Judge Madenspacher Recusal." This "Statement," which comprises five pages, is virtually incomprehensible, and contains nothing more than a defamatory rant accusing Geico's attorney of improper collusion with the trial judge and, consequently, seeking the trial judge's recusal and reversal of the summary judgment.

¶ 12 Before analyzing any issues which might have been presented in Appellant's *pro se* brief,[7] we must determine whether the issues have been properly preserved for our review. *See Commonwealth v. Wholaver,* 588 Pa. 218, 903 A.2d 1178 (2006) (holding the appellate courts may *sua sponte* determine whether issues have been properly preserved on appeal). In the case *sub judice,* the fact Appellant filed a timely response to the trial court's Pa.R.A.P.1925(b) order does not automatically equate with issue preservation. As our discussion *infra* reveals, the Pa.R.A.P. 1925(b) statement must be sufficiently "concise" and "coherent" such that the trial court judge may be able to identify the issues to be raised on appeal, and the circumstances must not suggest the existence of bad faith.

¶ 13 We begin with a discussion of *Kanter v. Epstein,* 866 A.2d 394, 400 (Pa.Super.2004), *alloc. denied,* 584 Pa. 678, 880 A.2d 1239 (2005), where this Court stated:

In *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998), the Pennsylvania Supreme Court specifically held that "from this date forward, in order to preserve their claims for appellate review, Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to [Pa.R.A.P.] 1925." *Lord,* 719 A.2d at 309. "Any issues not raised in a 1925(b) statement will be deemed waived." *Id.* This Court explained in *Riley v. Foley,* 783 A.2d 807, 813 (Pa.Super.2001), that Rule 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal. This Court has further explained that "a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all." *Commonwealth v. Dowling,* 778 A.2d 683, 686–87 (Pa.Super.2001). "Even if the trial court correctly guesses the issues Appellants raise on appeal and writes an opinion pursuant to that supposition the issues [are] still waived." *Commonwealth v. Heggins,* 809 A.2d 908, 911 (Pa.Super.2002).

¶ 14 Recently, in *Tucker v. R.M. Tours,* 939 A.2d 343 (Pa.Super.2007), this Court was faced with a voluminous Pa.R.A.P. 1925(b) statement and, in affirming the judgment, we concluded the appellants had engaged in misconduct by filing a Pa.

---

**6.** We note that, on February 7, 2007, after this appeal was filed, Geico filed in the trial court a motion for the assessment and imposition of fees due to Appellant's continued filing of *pro se* documents seeking to open the summary judgment.

**7.** As Geico and Ms. Rollins suggest, Appellant's brief is confusing and, at times, incoherent.

R.A.P.1925(b) statement with the intent to overwhelm the courts. Specifically, this Court stated:

> Our law makes it clear that Pa.R.A.P. 1925(b) is not satisfied by filing any statement. Rather, the statement must be "concise" and coherent as to permit the trial court to understand the specific issues being raised on appeal. Specifically, this Court has held that when appellants raise an "outrageous" number of issues in their 1925(b) statement, the appellants have "deliberately circumvented the meaning and purpose of Rule 1925(b) and ha[ve] thereby effectively precluded appellate review of the issues [they] now seek to raise." *Kanter*, 866 A.2d at 401.

> \* \* \*

> Appellants [engage] in misconduct when they "attempt[ ] to overwhelm the trial court by filing [a] Rule 1925(b) statement ... that contain[s] a multitude of issues that [Appellants] d[o] not intend to raise and/or c[an] not raise before this Court." *Kanter*, 866 A.2d at 402.

*Tucker v. R.M. Tours*, 939 A.2d 343, 346 (Pa.Super.2007).[8]

¶ 15 Following the filing of our opinion in *Tucker*, in *Eiser v. Brown & Williamson Tobacco Corp.*, 595 Pa. 366, 938 A.2d 417 (2007) (Baldwin, J., plurality),[9] the Supreme Court, for the first time, undertook an analysis of this Court's opinion in *Kanter*. Specifically, in examining this area of the law, the Pennsylvania Supreme Court stated the following:

> At the outset, we note that beyond this case, there are myriad recent decisions touching upon the issue before this Court, which reached varying conclusions. The Rule 1925(b) process has turned into a maelstrom in recent years, with some courts finding waiver where as few as two issues were raised in the 1925(b) statement. We recognize that the state of the law in this area has left those filing Rule 1925(b) statements unsure of what to do, especially in complicated cases that involve multiple issues worthy of arguing on appeal.

> Litigants who come to the courts of this Commonwealth, and attorneys who practice before these courts, must be able to preserve issues for appeal and move forward with the appellate process without fear of waiver. Therefore, we instruct lower courts to address, on the merits, all issues raised in good faith. With today's holding, this Court intends to clarify the confusion and quell the consternation related to waiver under Rule 1925(b) and the number of issues

---

**8.** In *Tucker*, we noted that Rule 1925(b) was amended on May 10, 2007, effective July 25, 2007. The amendment indicates, in relevant part, "The Statement should not be redundant or provide lengthy explanations as to any error. Where nonredundant, non-frivolous issues are set forth in an appropriately concise manner, the number of errors raised will not alone be grounds for finding waiver." Pa. R.A.P.1925(b)(4)(iv). However, as we concluded in *Tucker*, "the amendment to Rule 1925(b) does not apply to the case *sub judice* because the notice of appeal was filed prior to the effective date of the Rule's amendment." *Tucker*, 939 A.2d at 348 n. 6 (quotation marks and quotation omitted). In any event, even if the amendment was applicable, we conclude

Appellant's Pa.R.A.P.1925(b) statement does not meet Subsection (b)(4)(iv)'s requirements. That is, it was not merely the fact the statement was lengthy; but rather, the fact Appellant's statement is redundant, confusing, and in fact at times, incoherent which requires waiver in this case.

**9.** While we are not bound by the Supreme Court's plurality decisions, we find *Eiser* to be persuasive. Moreover, *Eiser* is the sole guide as to the manner in which the Supreme Court would resolve a Pa.R.A.P.1925(b) issue such as that which has been presented in the case *sub judice*.

raised. This standard provides, where necessary, a familiar tool to assess the basis for the issues raised in a given Rule 1925(b) statement. In some cases, a lack of good faith will provide a basis upon which to find waiver. For the reasons explained below, in the matter *sub judice,* we find that while the number of issues raised in the subject Rule 1925(b) statement may have been the result of a poorly reasoned appellate strategy, because the trial court did not find that Appellants acted in bad faith, there was no violation of a Rule of Appellate Procedure.

* * *

*Kanter* was a straightforward breach of contract action. A referral fee dispute arose between attorneys, stemming from an underlying award to the client of approximately $4 million. The fee paid to the attorney to whom the matter was referred amounted to almost $1.3 million. The referring attorney then sought $431,000 for the referral but was awarded only $215,500 (one-half the amount sought) by the jury. However, the trial court revised the award post-trial to reflect the $431,000 and added $645,000 in punitive damages as well as other awards for sanctions and delays. The defendant referral attorney and his new firm, which was also a defendant, both appealed. Together, they raised some 104 issues in their 1925(b) statement.

The *Kanter* trial court was troubled by the number of issues raised and felt that in addition to the Rules of Appellate Procedure, the duty of dealing in good faith with the court had been breached. The Superior Court agreed, finding that the only "motive underlying such conduct is to overwhelm the court system to such an extent that the courts are forced to throw up their proverbial hands in frustration." *Kanter,* 866 A.2d at 402. Rather than succumb to "such tactics," the Superior Court found the appeals did not comport with the Rules given the number of issues raised, and quashed them. *Id.* at 402–03. This Court denied allowance of appeal.

*Eiser,* 595 Pa. at 371–74, 938 A.2d at 420–422 (footnotes omitted).

¶ 16 In applying *Kanter* to the facts presented before it in *Eiser,* the Supreme Court concluded:

We agree with Appellants that *Kanter* should not have provided the basis for the Superior Court decision [finding waiver] in this matter. As described . . . the instant lawsuit is a complicated one [10] and, by comparison, *Kanter* was not. Thus, the factual predicate for the waiver determination in *Kanter* is so different than the facts presented here that we find it inapposite.

Although we have concluded that *Kanter* should not have been applied here, we must yet determine the larger question of whether Appellants waived their right to appellate review by raising so many issues that appellate review was impaired. As a practical matter, we encourage the lower courts to recognize

---

**10.** In *Eiser,* the decedent, who smoked cigarettes from the time he was only fourteen years old, died of lung cancer at the age of fifty-four years old. Appellees manufactured the brand of cigarettes, which the decedent smoked, and a dozen counts were raised by decedent's estate, which, in sum, blamed Mr. Eiser's habitual smoking, and consequently his lung cancer, on the tobacco industry. Decedent's estate contended that Appellees' liability stemmed from, *inter alia,* an advertising campaign that the Carlton brand of cigarettes used. The lawsuit involved eleven defendants and stretched over four years from the date the suit was filed to the jury verdict, and some four thousand exhibits were marked for trial. By all accounts, the litigation in *Eiser* was a complicated one.

that on rare occasions a party may, in good faith, believe that a large number of issues are worthy of pursuing on appeal.

Appellants have brought forth a complicated mulit-count lawsuit with numerous defendants resulting in many trial court rulings. Unlike *Kanter*, the trial court in the instant matter did not find that the Appellants acted in bad faith, intending to deliberately circumvent the meaning and purpose of Rule 1925(b). Rather, we find, counsel for Appellants took his marching orders from the case law requiring that all issues not raised are waived. Given the timeframe in which he had to file his Rule 1925(b) statement and the number of rulings made both before and during trial, it seems eminently reasonable, and certainly not outrageous, that counsel included a large number of issues. . . .

In sum, the number of issues raised in a Rule 1925(b) statement does not, without more, provide a basis upon which to deny appellate review where an appeal otherwise complies with the mandates of appellate practice. In a rare case, like *Kanter*, where . . . there was an attempt to thwart the appellate process by including an exceptionally large number of issues in a rule 1925(b) statement, waiver may result.

*Eiser*, 595 Pa. at 382–84, 938 A.2d at 426–428 (footnotes omitted) (footnote added).

¶ 17 Moreover, the Supreme Court in *Eiser* indicated that:

We recognize that, as a practical matter, the courts will never be able to completely rule out the possibility that, as Justice Castille suggests in his dissenting opinion, a disgruntled appellant might raise issues on appeal to punish a trial judge who ruled against that party. Thus, the good faith inquiry we suggest is not one that requires a finding of fact, *per se.* Rather, today's holding simply requires that lower courts undertake consideration of whether the circumstances of the lawsuit at issue suggest that there is a lack of good faith involved. Only then should a litigant suffer the loss of appellate review due to the volume of issues raised.

*Eiser*, 595 Pa. at 383 n. 16, 938 A.2d at 427 n. 16.

¶ 18 In applying the foregoing precedent to the case *sub judice*, we conclude it is proper to find waiver.[11] Here, while Appellant's five-page statement can certainly be characterized as "lengthy," the crux of the problem is that the statement is an incoherent, confusing, redundant, defamatory rant accusing Geico's attorney and the trial court judge of conspiring to deprive Appellant of his constitutional rights. There is simply no legitimate appellate issue presented in Appellant's statement.

¶ 19 Moreover, our review of the record and trial court opinion leads us to conclude that Appellant's statement is but another example of his breach of his duty of good faith and fair dealing with the court system. As the foregoing reveals, despite a court-ordered stay of proceedings, Appellant continued to file pleadings and overwhelmed the trial court to the point Appellant was found to be in contempt. Appellant refused to participate in court-ordered arbitration and, instead, resumed his tactic of filing a multitude of pleadings with the trial court judge. It is clear that

11. We are cognizant that, despite the trial court's recommendation to the contrary, Appellant continues to proceed without counsel. However, his *pro se* status does not relieve him of the duty to follow the Rules of Appellate Procedure. *See Jones v. Rudenstein*, 401 Pa.Super. 400, 585 A.2d 520 (1991).

Appellant's entire tactic has been to overwhelm and punish Geico and Ms. Rollins, as well as the judicial system.

¶ 20 We stress that this case does not present as one where an appellant is simply raising numerous issues in a complicated case in the absence of bad faith. Rather, Appellant's statement reveals a deliberate attempt to circumvent the meaning and purpose of Rule 1925(b) and to overwhelm the court system to such an extent the courts are "forced to throw up their proverbial hands in frustration." Therefore, we conclude waiver is the appropriate remedy in this case.

¶ 21 Affirmed.