J-A19040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF ARTHUR T. MURPHY, JR., DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: MICHAEL MURPHY | : : : : : : : | |
| | : | No. 36 MDA 2022 |

Appeal from the Order Entered November 30, 2021
In the Court of Common Pleas of York County Orphans' Court at No(s):
6718-2267

BEFORE: BOWES, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:         **FILED: SEPTEMBER 27, 2022**

Appellant Michael Murphy ("Appellant") appeals from the order entered

in the Court of Common Pleas of York County, Orphans' Court, which granted

the motion for summary judgment filed by Kevin A. Murphy, the executor of

the estate of Arthur T. Murphy, Jr. ("Decedent"), and denied the cross-motion

for summary judgment filed by Appellant, thus dismissing Appellant's

objections and claim as a creditor against Decedent's estate. After a careful

review, we affirm.

The relevant facts and procedural history are as follows: On March 8,

2012, Decedent executed his Last Will and Testament ("the Will"), and on July

_____

[*] Former Justice specially assigned to the Superior Court.

16, 2018, he executed a codicil to the Will in which he named his grandson, Kevin A. Murphy ("the Executor"), as the executor of his estate.

On December 13, 2018, Decedent died. On December 18, 2018, the Executor filed a petition for probate, and on that same date, the Register of Wills granted letters testamentary to the Executor.

On June 24, 2019, Appellant, who is Decedent's son, filed a "Notice of Claim" against Decedent's estate in the amount of $704,336.13. Appellant also filed a praecipe for citation indicating that as a creditor he sought an accounting of the estate.

On September 6, 2019, the Executor filed a response wherein he indicated Appellant's claim as a creditor of the estate was invalid. The Executor noted "[t]he claim asserted by [Appellant] against the estate…is identical to a claim which he unsuccessfully pursued as a Confession of Judgment proceeding docketed at 2019-NO-000952." Executor's Response, filed 9/6/19, at 2.

On October 16, 2019, the Executor filed an accounting and petition for proposed distribution of the estate. Therein, the Executor acknowledged Appellant claimed $704,336.13 as a creditor against the estate; however, the Executor denied the validity of the claim and specified the estate would not be paying the claim.

On November 13, 2019, Appellant filed an objection to the Executor's accounting and proposed distribution of the estate. Specifically, Appellant

averred the Executor failed to make provisions for the payment of his claim as a creditor against the estate. As evidence of his claim, Appellant attached to his objection an exhibit: a February 8, 2000, Note, in which the Decedent promised to pay his sons, Appellant and Arthur T. Murphy, III ("Tom"),[1] a total of $210,000.00, plus interest.[2]

On February 21, 2020, the Executor filed an answer with new matter to Appellant's objection to the Executor's accounting and proposed distribution. In the new matter, the Executor averred Decedent repaid the Note in full during Decedent's lifetime, and thus, Appellant had no valid claim as a creditor against the estate. The Executor further averred Appellant's claim was barred by the doctrines of satisfaction, laches, and unclean hands.

Thereafter, following discovery, on October 27, 2021, the Executor filed a motion for summary judgment and an accompanying brief. The Executor averred that, even if there is no genuine issue of material fact that Decedent entered into a $210,000.00 loan agreement as evidenced by a Note between him and his two sons, Appellant and Tom, the undisputed competent evidence

---

[1] Arthur T. Murphy, III's nickname is "Tom," and for the ease of discussion, we shall refer to him as such.

[2] The Note indicates that Decedent borrowed a total of $210,000.00 from his sons, Appellant and Tom, and Decedent agreed to repay each son $105,000.00, plus 10% yearly interest.

reveals Appellant's claim as a creditor against the estate is invalid as a matter of law since the loan was repaid during Decedent's lifetime.

Specifically, the Executor indicated that, during discovery, all witnesses, except Appellant, testified Decedent's obligations under the Note had been fully repaid prior to his death. The Executor admitted Appellant proffered his own deposition testimony that Decedent did not fully repay the monies owed to Appellant under the Note; however, the Orphans' Court ruled during discovery that Appellant's testimony on this matter was inadmissible under the Dead Man's Statute.[3] Thus, the Executor asserted that, absent any admissible competent testimony that Decedent did not repay the Note in full during his lifetime, the fact of full repayment is deemed undisputed.

Accordingly, the Executor sought summary judgment against Appellant on the basis there is no genuine issue of material fact that Appellant has no valid claim as a creditor, and, therefore, the estate is entitled to judgment as a matter of law.

On November 15, 2021, Appellant filed an answer to the Executor's motion for summary judgment. Moreover, on this same date, Appellant filed a cross-motion for summary judgment and an accompanying brief. Therein, Appellant averred there is no genuine issue of material fact that, on February

---

[3] We note the Orphans' Court granted the Executor's motion *in limine* to preclude Appellant from testifying under the Dead Man's Statute. Appellant filed an appeal to this Court from the order; however, this Court quashed the appeal as being from a non-appealable interlocutory order.

8, 2000, Decedent signed a Note indicating he owed his two sons, Tom and Appellant, a total of $210,000.00, to be repaid by Decedent by February 8, 2020, or upon the Decedent's death, whichever occurred first. Appellant also averred there is no genuine issue of material fact that the Note provided for an interest rate of 10% per annum, compounded daily, until paid in full.

Appellant admitted that his brother, Tom, testified in his deposition that the Note had been "paid down to the tune of $105,000.00 for each brother" in 2004 or 2005. *See* Appellant's Cross-Motion for Summary Judgment, filed 11/15/21. However, Appellant averred there is no genuine issue of material fact that this payment was for principal only, and thus, Decedent never paid the interest as provided for under the Note. Therefore, Appellant contended:

> 14. Using a date most favorable to the estate, *i.e.*, January 1, 2004 (which would reduce the interest to be paid), with the payment of $105,000.00 on that date, the payoff of the Note with interest would be $141,729.35.
>
> 15. As of Jan[uary] 1, 2004, there remained $36,729.00 in unpaid interest.
>
> 16. In the time that has elapsed since Jan[uary] 1, 2004, to the present, 215 months or 17.92 years have passed.
>
> 17. The sum now due is $201,005.00.

*Id.*

Accordingly, Appellant contended there is no genuine issue of material fact that he has a valid claim as a creditor, and he is entitled to judgment as a matter of law against the estate as it pertains to the unpaid interest on the Note.

On November 29, 2021, the Executor filed a reply brief in support of the estate's motion for summary judgment. Therein, the Executor indicated that Tom's undisputed deposition testimony established that any money Decedent owed his sons, Tom and Appellant, under the Note, was repaid in its entirety during Decedent's lifetime. The Executor averred there was no genuine issue of material fact that the payment made by Decedent was an all-inclusive, full payout of any obligation Decedent had under the Note. The Executor noted Appellant admitted in his cross-motion for summary judgment that his testimony regarding whether the Note had been satisfied was barred by the Dead Man's rule.

By opinion and order entered on November 30, 2021, the Orphans' Court granted the Executor's motion for summary judgment and denied Appellant's cross-motion for summary judgment. The Orphans' Court dismissed Appellant's objections to the accounting, as well as his claim as a creditor against the estate.

On December 29, 2021, Appellant filed a notice of appeal. The Orphans' Court directed Appellant to file a Pa.R.A.P. 1925(b) order,[4] Appellant timely complied,[5] and the Orphans' Court filed a responsive Rule 1925(a) opinion.

On appeal, Appellant sets forth the following issues in his "Statement of Questions Involved" (verbatim):

A. The [Orphans'] Court used the wrong dates in determining that the Statute of Limitations had been violated.

B. The Court should not consider arguments waived or not asserted by the parties.

C. The estate did not raise the defense of limitations in moving for Summary Judgment.

D. Appellant's right to the interest did not require him to testify.

E. The Court erred in ruling Appellant was disqualified by the Dead Man's Rule.

Appellant's Brief at 4.

_____

[4] We note that, pertaining to the contents of the Orphan's Court's order, the order complies with Pa.R.A.P. 1925(b)(3). Moreover, the certified docket entries contain a notation indicating the order was properly served on Appellant on January 3, 2021.

[5] Appellant presented the following issues in his court-ordered Rule 1925(b) statement (verbatim):
1. The Court erred in granting summary judgment in favor of the estate.
2. The Court used an improper method to determine if the petitioner's conduct occurred within the period of the statute of limitations.
3. The Court's methodology in determining the case showed favoritism to the estate.
4. The Court erred in not granting summary judgment in favor of the petitioner.
Appellant's Rule 1925(b) Statement, filed 1/14/22.

Initially, we note that, aside from his first appellate issue, Appellant has waived his claims on appeal. Specifically, it is well-established that any issue not raised in a court-ordered Rule 1925(b) statement will be deemed waived for appellate review. *Commonwealth v. Lord*, 553 Pa. 425, 719 A.2d 306 (1998). Further, an appellant's concise statement must identify the errors with sufficient specificity for the lower court to identify and address the issue the appellant wishes to raise on appeal. *See Jiricko v. Geico Ins. Co.*, 947 A.2d 206, 210 (Pa.Super. 2008). Failure to do so results in waiver of the claim on appeal. *See id.*

In the case *sub judice*, Appellant has waived all appellate issues, except for his first appellate issue, since he did not present the issues with specificity in his court-ordered Rule 1925(b) statement. *See id.* Thus, we shall proceed to an examination of Appellant's first appellate issue only.

Appellant contends that, in granting summary judgment in favor of the estate and denying his cross-motion for summary judgment, the Orphans' Court used "the wrong dates" in determining Appellant did not present his claim against the estate within the applicable statute of limitations.

> In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the [orphans'] court. Our Supreme Court has stated the applicable standard of review as follows: An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the nonmoving party, and all doubts as to the

existence of a genuine issue of material fact must be resolved
against the moving party. As our inquiry involves solely questions
of law, our review is *de novo.*

Thus, our responsibility as an appellate court is to determine
whether the record either establishes that the material facts are
undisputed or contains insufficient evidence of facts to make out
a *prima facie* cause of action, such that there is no issue to be
decided by the fact-finder. If there is evidence that would allow a
fact-finder to render a verdict in favor of the non-moving party,
then summary judgment should be denied.

*Jones v. Levin*, 940 A.2d 451, 452–54 (Pa.Super.2007) (internal quotation

marks, modifications, and citations omitted).

Assuming, *arguendo*, Appellant is correct that the statute of limitations

was not implicated in this case, we conclude Appellant is otherwise not entitled

to relief. Specifically, Appellant fails to address the Orphans' Court's conclusion

that there is no genuine issue of material fact that Decedent's obligation under

the Note was fully satisfied, and thus, Appellant is not entitled to relief as a

matter of law.

As the Orphans' Court indicated:

[Appellant] has all but conceded that he is unlikely to prevail
in his claim under the Note. Thus, at the time of his [filing of the
cross-motion for summary judgment] his request for relief has
changed somewhat[.] [I]nstead of seeking repayment of the Note
and interest in full he now seeks only that interest to which he
[alleges he] would be entitled under the…general theory that the
Note at issue was paid off sometime in 2004 or 2005.

***

The filings in this case have made it abundantly clear that
without the testimony of [Appellant], which the [Orphans' Court]
barred, [Appellant] could not even present competent evidence to
support his request for relief.

Orphans' Court Opinion, filed 11/30/21 (unpaginated).

Further, the Orphans' Court explained:

It is Appellant's inability to testify that he was not paid back which undoubtedly leads to the entry of summary judgment in favor of the estate. As stated by [the Orphans' Court], Appellant cannot bring forward a competent witness to testify he was not paid back on the Note. The estate, on the other hand, brought forward a competent witness whose now undisputed testimony is that Appellant was in fact paid back under the Note.

Thus, the burden shifts to Appellant to show evidence of a factual dispute. He did not and cannot do so. In fact, in a letter dated October 19, 2021, and made part of the record, Appellant's counsel stated, "I concede, on the state of matter as of today, [Appellant] will most likely not be able to establish entitlement to the $105,000.00 [of the Note]." When his own counsel conceded Appellant cannot establish his case, he cannot now claim it was error for this Court to enter summary judgment against him.

Orphans' Court Opinion, filed 1/21/22 (unpaginated) (citations to record omitted).

We agree with the Orphans' Court's sound analysis. Here, the Executor testified that his father, Tom, who was one of the parties to the Note, confirmed that any obligation Decedent had under the Note was satisfied before his death. *See* Executor's Deposition, dated 3/19/20, at 22, 39.

Moreover, Tom testified the Note at issue "was paid off in full." Tom's Deposition, dated 3/19/20, at 15. He indicated that, at the time of Decedent's death, there was "not one penny" owed. *Id.* at 16. He testified he told Appellant his claim against the estate was "bullshit" because the Note "was paid off" by Decedent before his death. *Id.* at 25.

Furthermore, in his deposition, Tom shed light on the circumstances surrounding Decedent's issuing of the Note to his sons. Specifically, Tom suggested the "Note" was not evidence of a valid loan between the parties but was used by Decedent to gift money to his sons before his death.[6] In this vein, Tom testified that, in 2000, he gave Decedent a check for $210,000.00.; however, at the same time, Decedent gave him a check for approximately $223,000.00. *Id.* at 12-15. He indicated that later, in 2004 or 2005, the Decedent gave him and Appellant each $105,000.00. *Id.*

Absent any competent evidence to the contrary, we agree with the Orphans' Court that there is no genuine issue of material fact that Appellant was not owed any money, principal or interest, under the Note. *Jones*,

_____

[6] The estate attached as an exhibit to Tom's deposition a handwritten statement made by Tom, and he was questioned about his handwritten statement during his deposition. In his statement, Tom indicated the money at issue was never actually a loan between father and sons. *See* Tom's Deposition Exhibit, dated 3/19/20. Rather, Tom indicated Decedent gave him and Appellant a check for $223,320.63, and then Decedent asked Tom to give him back a check for $210,000.00, thus allowing the brothers to keep and split the difference as "interest." *Id.* Tom indicated that, at the same time, Decedent gave Appellant and him a "Note" to suggest there had been a loan of $210,000.00 from Appellant and Tom to Decedent, subject to interest. *Id.* Tom indicated the "Note was for the purpose of proving where the $6,600.00 came from in case of an audit on [the brothers'] finances." *Id.* Later, in 2004 or 2005, Decedent wrote Appellant and Tom each a check for $105,000.00. *Id.* Tom indicated the Decedent told them that, "even though the Note was paid off, he would not mark it as such because he would continue to write [them] checks every three or four years with no tax consequences." *Id.* Thus, Tom suggested the "Note" was not actually a loan or "really in force"[;] but rather, it was used by Decedent as a way to funnel money to his sons in an attempt to avoid paying taxes. *Id.*

*supra*.  Thus, as a matter of law, the Orphans' Court did not err in granting summary judgment in favor of the estate, denying Appellant's cross-motion for summary judgment, and dismissing Appellant's objection and claim as a creditor against the estate.  *Id.*

Affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/27/2022